NOT FOR PUBLICATION                                      (Doc. Nos. 74, 76)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| ESTATE OF HARRISON, et al., | |
| Plaintiffs, | Civil No. 12-6683 (RBK/KMW) |
| v. | **OPINION** |
| TRUMP PLAZA HOTEL & CASINO, et al., | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motions to Dismiss of Defendants Craig F. Dothe Architect, LLC ("Defendant Dothe") and Herbert Grana ("Defendant Grana") (Doc. No. 74) and Defendant Ancor, Inc. ("Defendant Ancor") (Doc. No. 76) Plaintiffs' Third Amended Complaint pursuant to Rule 12(b)(6), in which Plaintiffs assert certain tort claims in a wrongful death action against all named defendants. For the reasons stated herein, Defendants Dothe's and Ancor's Motions to Dismiss will be granted.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

This matter arises from an alleged wrongful death incident, which occurred on or about January 29, 2012. (See Third Amended Complaint ("TAC") (Doc. No. 72).) The lawsuit was filed by Irwin E. Harrison as the executor of the estate of Brian D. Harrison (the "Decedent"),

---

[1] On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." Accordingly, the following facts are taken from Plaintiffs' Third Amended Complaint. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

1

and Irwin and Irene Harrison individually, the biological parents of the Decedent (collectively "Plaintiffs").  (Id. ¶¶ 1-2.)

Plaintiffs allege that the Decedent and several others were in Atlantic City, New Jersey on the night of January 28, 2012, celebrating a friend who had enrolled in the United States Marine Corps.  (Id. ¶ 15.)  After consuming alcoholic beverages at Firewaters restaurant in the Tropicana Casino & Resort, the Decedent entered the Sbarro's restaurant ("Defendant Sbarro") within the Trump Plaza Hotel & Casino ("Defendant Trump") in the early morning of January 29, 2012.  (Id. ¶¶ 17-20.)

It is Plaintiffs' belief that the Decedent saw an "Exit" sign above a door to the left of the restrooms inside Defendant Sbarro's restaurant, and passed through this door into Defendant Trump's valet compartment area.  (Id. ¶¶ 22-24.)  The door closed behind the Decedent and locked, trapping him within the valet compartment area.  (Id. ¶ 24.)  While attempting to use Defendant Trump's "man-lift," the Decedent fell several stories down a hole in the floor of the valet compartment area.  (Id. ¶ 25.)  Nearly forty-five minutes later, one of Defendant Trump's valet workers discovered the Decedent lying on the first floor of the valet "man-lift" area, covered in blood and moaning.  (Id. ¶ 26.)  The valet worker left the Decedent to get help, but upon returning to the Decedent the valet worker heard two loud bangs, and found the Decedent lying directly beneath Defendant Trump's "man-lift."  (Id. ¶ 27.)

Plaintiffs filed the instant action on October 22, 2012, asserting Negligence, Wrongful Death, and  Survival Action claims against Defendants Trump, Trump Plaza Associates, and ABC Corporations I-V.  (See Original Complaint (Doc. No. 1).)[2]  Plaintiffs then filed their First

---

[2] Plaintiffs stated that "ABC Corporations 1-V are companies that at all relevant times herein maintained, controlled, supervised, managed and were responsible for the property entrusted by Defendants, Trump which is the subject of this accident."  (Original Compl. ¶ 6.)

2

Amended Complaint as of right on February 22, 2013, adding a claim for Liquor Liability, naming Adam Good, LLC d/b/a Firewaters, Firewaters, Hoot Owl Restaurants, LLC, and Defendant Sbarro as additional defendants, and removing Trump Plaza Associates as a named defendant.  (See First Amended Complaint ("FAC") (Doc. No. 7).)[3]  On May 29, 2014, this Court granted Plaintiffs leave to file a Second Amended Complaint (Doc. No. 59), which was filed on May 28, 2014, and named Dothe, Grana, and Ancor as additional defendants, and added a claim for Negligence Per Se.  (See Second Amended Complaint ("SAC") (Doc. No. 57).)  With respect to Defendants Dothe, Grana, and Ancor, Plaintiffs alleged a Wrongful Death claim, (id. Count IV), a Survival Action, (id. Count V), a Negligence Per Se claim, (id. Count VI), and individual claims for Negligence against each defendant.  (See id. Counts VII-IX.)

Defendants Dothe and Grana moved on June 16, 2014, to dismiss Plaintiffs' SAC pursuant to Fed. R. Civ. P. 12(b)(6), arguing it was barred by the statute of limitations.  (Doc. No. 62.)  However, on July 17, 2014, this Court ordered that Plaintiffs file a Third Amended Complaint, in which they were to properly allege citizenship of each party (Doc. No. 71).  In their TAC, filed on July 24, 2014, Plaintiffs alleged the same Wrongful Death, (id. Count III), Survival Action, (id. Count IV), and Negligence Per Se, (id. Count V), claims against Defendants Dothe and Ancor, as well as the same individual Negligence claims as were alleged in the SAC.  (Id. Counts VI-VII.)[4]

---

[3] Plaintiffs maintained their claims against Defendants Trump Plaza Hotel & Casino and ABC Corporations I-V, noting that "ABC Corporations I-V are companies that at all relevant times herein maintained, controlled, supervised, managed and were responsible for the properties and entrusted by Defendants Trump, Cafe Sbarro, Firewaters, Adam Good, LLC, and/or Hoot Owl Restaurants, LLC which are the subject of this accident."  (FAC ¶ 12.)

[4] In Plaintiffs' TAC they removed Defendant Grana as a named defendant.  Because the TAC is the operative complaint in the present matter, the Court notes that Herbert Grana is no longer a party to this action.  Accordingly, Defendants Dothe's and Grana's Motion to Dismiss the TAC will be dismissed as moot as to Defendant Grana.

On July 28, 2014, Defendants Dothe and Grana filed a Motion to Dismiss Plaintiffs' TAC, based on the same statute of limitations argument, (Doc. No. 74), and on August 12, 2014, Defendant Ancor also moved to dismiss Plaintiffs' TAC on the same grounds, relying on Defendants Dothe's and Grana's brief in support of its Motion to Dismiss.  (See Doc. No. 76.)

## II.	LEGAL STANDARD

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips, 515 F.3d at 233).  In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).  Yet, while "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678-79.

A statute of limitations defense may be raised in a 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S.

4

Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). The statutory bar must be "apparent on the face of the complaint" in order to form the basis for a dismissal under Rule 12(b)(6). Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978). See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

## III.   DISCUSSION

The parties do not dispute that a two-year statute of limitations applies to the state-law personal injury tort claims filed by Plaintiffs against Defendants Dothe and Ancor in Counts Four through Eight of the SAC. (See Pls.' Opp'n to Defs. Dothe's and Grana's MTD ("Pls.' Opp'n to Dothe") at 5; Pls.' Opp'n to Def. Ancor's MTD ("Pls.' Opp'n to Ancor") at 5; Defs. Dothe's and Grana's Br. ("Defs.' Br.") at 6.)[5] Because the events giving rise to the injury took place on January 29, 2012, and there is no indication that Plaintiffs did not know of the injury at that time, the statute of limitations date for these claims would have been January 29, 2014. See N.J. Stat. § 2A:14-2(a) ("Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within 2 years next after the cause of any such action shall have accrued").[6] Plaintiffs' Original Complaint, filed on October 22, 2012, and First Amended Complaint, filed on February 22, 2013, were both timely

---

[5] Counts Four through Eight in the SAC correspond to Counts Three through Seven in the TAC. Because the TAC did not substantively change the claims in the SAC, the Court will refer to the claims and designations found in the SAC hereinafter, as that is the complaint referred to by the parties in their briefs. The Court notes that the analysis is the same with respect to the TAC.

[6] Claims brought under New Jersey's Wrongful Death Act are also subject to a two year statute of limitations from the time of death, N.J. Stat. § 2A:31-3, as are Survival claims brought under New Jersey law. N.J. Stat. § 2A:15-3.

under the applicable statute of limitations.[7] However, it was not until April 30, 2014, that Plaintiffs moved to amend their FAC to include Defendants Dothe and Ancor as a defendants, which the parties agree was after the two year statute of limitations had expired.

The question presented in these Motions to Dismiss is whether Plaintiffs' attempt to add Defendants Dothe and Ancor in the SAC was barred by the relevant statute of limitations. Plaintiffs argued in their Motion to Amend that this amendment did not violate the statute of limitations because the amendment related back to the original, timely filed complaint, and because the claims against Dothe and Ancor fell within the ambit of the New Jersey fictitious party pleading rule. (See Plaintiffs' Motion to Amend (Doc No. 53) ¶¶ 14-19.) Defendants Dothe and Ancor disagree, claiming Plaintiffs failed to properly comply with the specificity required in the fictitious party rule. (See Defs.' Br. at 9-10.) Because the Court agrees with Defendants Dothe and Ancor and will grant their Motions to Dismiss, it declines to address their remaining arguments.

Plaintiffs' SAC is only timely as to Defendants Dothe and Ancor if it relates back to the initial filing date under either the relation back rule or the fictitious party rule. See N.J. Stat § 4:9–3 (allowing for relation back of amendments);[8] N.J. Stat. § 4:26–4 (allowing naming fictitious defendants and later substituting true names);[9] see also Viviano v. CBS, Inc., 101 N.J.

---

[7] The FAC was the last operative complaint filed within the statute of limitations, and did not meaningfully change the description of the fictitious ABC Corporations, or the relevant substantive claims against the named defendants. Therefore, the Court will hereinafter refer to the FAC when discussing any claims or fictitious defendant descriptions filed within the statute of limitations.

[8] Hereinafter, § 4:9-3 will be referred to as "Rule 4:9-3," as it is found within the New Jersey Rules of Court section of the New Jersey Statutes.

[9] N.J. Stat. § 4:26–4 states:

> In any action ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification. Plaintiff shall on motion, prior to judgment, amend the

538, 548 (1986) (holding that, under Rule 4:26–4, "an amended complaint identifying the defendant by its true name relates back to the time of filing of the original complaint"). In this case Rule 4:9-3 is not applicable,[10] as Plaintiffs originally filed suit against the fictitious ABC Corporations, presupposing a need for a subsequent amendment, rather than mistakenly identifying the wrong defendants. See McGill v. John Does A-Z, 541 Fed. App'x 225, 227-28 (3d Cir. 2013) (noting that Rule 4:9-3 "permits the addition of a new claim or a new party when the initial complaint did not contemplate the need for such an amendment … such as where there was a mistake as to the identity of the proper party.") (internal quotation marks and citation omitted) (quoting Viviano, 101 N.J. at 552); Alcius v. City of Trenton, No. 13-716, 2014 WL 4663204, at *2 n.3 (D.N.J. Sept. 18, 2014) ("Plaintiff's original Complaint against fictitious John/Jane Does establishes a need for a later amendment. Thus, the fictitious party rule, not N.J.R. 4:9–3, is the applicable rule under which the amendment should be analyzed.") (citing McGill, 541 Fed. App'x at 227-28); see also Viviano, 101 N.J. at 549 (noting that, "the more specific identification of [a] fictitiously-designated defendant [does] not introduce a new party or a new cause of action.") (citing Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 120 (1973)).[11]

---

complaint to state defendant's true name, such motion to be accompanied by an affidavit stating the manner in which that information was obtained.

(emphasis added). Hereinafter, § 4:26-4 will be referred to as "Rule 4:26-4," as it is found within the New Jersey Rules of Court section of the New Jersey Statutes.

[10] Because New Jersey law sets the relevant statute of limitations, this Court analyzes the claims against Defendants Dothe and Ancor under the New Jersey, rather than the federal, relation back rule. See McGill v. John Does A-Z, 541 Fed. App'x 225, 227 n.2 (3d Cir. 2013) (citing Fed. R. Civ. P. 15(c)(1)(A) ("An amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back…")).

[11] Plaintiffs' reliance on New Jersey's ten year statute of repose for personal injury claims arising from unsafe conditions on real property is also inapplicable. (See Pls.' Opp'n to Dothe at 15; Pls.' Opp'n to Ancor at 15; see also N.J. Stat. § 2A:14-1.1.) Section 2A:14-1.1 is not a statute of limitation, but is rather a statute of repose. See Woessner v. Air Liquide Inc., 242 F.3d 469, 472 n.1 (3d Cir. 2001) (describing § 2A:14-1.1 and it differs from a

Rule 4:26-4 defines the practice for relation back of amendments with respect to fictitious name defendants. The purpose of Rule 4:26-4 "is to allow a plaintiff faced with a time limitation to institute an action and thereafter, upon learning the true name of the 'John Doe' defendant, amend the complaint to specifically name the defendant." Cruz v. City of Camden, 898 F. Supp. 1100, 1107 (D.N.J. 1995) (citing Mileta v. Doe, 158 N.J. Super. 550 (Law Div. 1978)). In Farrell, the New Jersey Supreme Court stated that a plaintiff will be permitted to amend his complaint after the statute of limitations has expired where such an amendment is justified upon a "proper balance of considerations of individual justice and repose." Farrell, 69 N.J. at 122. So long as there no prejudice, reliance, or unjustifiable delay, the fictitious-name practices provided by Rule 4:26-4 may save Plaintiffs' claims against Defendants Dothe and Ancor in the SAC from the statute of limitations bar. Viviano, 101 N.J. at 549 (citing Farrell, 62 N.J. at 122-23).

Here, Defendants Dothe and Ancor face prejudice because they never received proper "notice" of the lawsuit. Rule 4:26-4 requires that Plaintiffs provide an "appropriate description" sufficient to identify the defendants they seek to add. Id. This Rule "may be relaxed where there is an imprecise but similar allegation against the excluded defendant as to the capacity in which it was later found alleged to be responsible." Rutkowski v. Liberty Mut. Ins. Co., 209 N.J. Super. 140, 147 (App. Div. 1986) (citing Viviano, 101 N.J. 538). However, the Rule is not meant to "emasculate [New Jersey's] liberal pleading rules," Rutkowski, 209 N.J. Super. at 147 (citing N.J. Stat. § 4:5-2), lest a plaintiff "file a complaint on the last day before the statute of

---

traditional statute of limitations, including preventing claims from arising after a designated period, regardless of when a cause of action may have accrued); see also Hein v. GM Const. Co., Inc., 330 N.J. Super. 282, 286 (App. Div. 2000) ("[Section 2A:14-1.1] does not 'bar' a remedy 'in the sense of providing an injured person a certain time to institute suit after the accrual of a cause of action.' … [r]ather, it 'prevents what might otherwise be a cause of action from ever arising. Injury occurring more than ten years after the performance of the negligent act simply forms no basis for recovery.'") (internal quotation marks omitted) (quoting E.A. Williams, Inc. v. Russo Dev. Corp, 82 N.J. 160, 167 (1980)). As such, § 2A:14-1.1 cannot extend the statute of limitations for Plaintiffs' claims—it may only extinguish the availability of certain claims ten years after the date of construction.

limitations would run alleging merely that he was injured in a particular situation and that 'John Doe(s) were negligent and responsible for plaintiff's loss.'" Rutkowski, 209 N.J. Super. at 147.

In Viviano, while the New Jersey Supreme Court accepted the plaintiff's fictitious designation of "John Doe Company … [who] manufactured the Record Press Machine", as sufficient for referring to a subsequently named manufacturer of individual machine components, it cautioned future plaintiffs to more accurately designate fictitious parties. Id. 101 N.J. at 553-55. It noted that going forward, Plaintiffs should name in the body of the complaint the cause of action against the fictitious defendants whose identities are unknown, and should specify as near as can be what role those fictitious parties had in the cause of action. See id. at 555 ("For the future, however, a plaintiff who is injured in an industrial accident should at least name as fictitious parties, if their true identities are unknown, those entities that designed, manufactured, and maintained the subject machine and its component parts. Furthermore, the plaintiff should allege in the body of the complaint, in general terms if necessary, his or her causes of action against those entities.")

Relying on Viviano, the court in Rutkowski held that plaintiffs' description in their original complaint of "'John Doe' defendants as being 'the designers of, manufacturer of, seller of, distributor of, repairer of, modifier and/or renovator of, or ... otherwise responsible for' the machine that injured plaintiff," was insufficient to indicate that plaintiffs intended to make a claim for negligent safety inspections against certain insurance companies. Rutkowski, 209 N.J. Super. at 142-43. The court noted that there was "no specific designation of the basis of the missing defendant's responsibility. There was only general language indicating that the basis might go beyond the specific capacities alleged." Id. at 146; see also id. at 147 ("To permit such a general description of the fictitious defendant as the one before us (one 'otherwise

responsible'), would emasculate even our liberal pleading rules."); Cruz, 898 F. Supp. at 1110 ("[P]laintiff seeks to have the generic description of 'individuals responsible for the safekeeping and supervision of the prison', to serve as a blanket identification of any officer who worked in the prison on the day in question.  This simply will not do.  Such a sweeping description lacks the appropriate specificity required to give reasonable notice. … Sufficient notice of suit would have been met if the original complaint included the appropriate job title description of Sergeant or Supervisor, and was supplemented by an adequate description of the specific act being alleged.")

In their FAC, Plaintiffs described Defendant ABC Corporations as "companies that … maintained, controlled, supervised, managed and were responsible for the properties."  (Id. ¶ 12.) Yet, according to the SAC, Defendant Dothe "was employed by [Defendants Trump and/or Sbarro] as an <u>architect to administer, design and manage the Cafe Sbarro construction project</u> located at Trump Plaza Hotel & Casino," (id. ¶ 96 (emphasis added)), and Defendant Ancor "was employed by [Defendants Trump and/or Sbarro] as a <u>construction manager and/or construction contractor to administer and manage the Cafe Sbarro construction project</u> located at Trump Plaza Hotel & Casino."  (SAC ¶ 93 (emphasis added).)  The original designations of the ABC Corporations in the FAC did not refer, even equivocally, to those who designed or constructed the alleged dangerous condition.

Nor is it apparent when viewing the FAC as a whole that Plaintiffs intended to refer to the entities responsible for the design and construction of the alleged dangerous condition.  In their FAC Plaintiffs generally asserted that the various defendants:

> 31.  … were under a duty to maintain in safe condition their premises
>
> 32.  … were under a duty to inspect the area where Decedent fell.

> 34. … were negligent in failing to maintain their premises in safe condition, including but not limited to the proper maintenance of the valet elevator area.

(Id. ¶¶ 31-32, 34; see also id. ¶¶ 46-50, 52.) Plaintiffs contended that as the direct result of the "unsuitable maintenance and defective condition of the valet elevator area" Decedent suffered bodily injuries and an untimely death. (Id. ¶ 37.) Moreover, they specifically alleged the Decedent was injured and died as a result of the following examples of the defendants' negligence and carelessness:

> a. failing to properly maintain their premises;
> b. failing to inspect the premises;
> c. failing to provide sufficient warning to Decedent and other business invitees of the dangerous and defective condition;
> d. failing to train employees properly;
> e. failing to correct a dangerous condition;
> f. failing to install proper safety devices; and
> g. failing to exercise proper care for the safety of Decedent and others lawfully on the premises.

(Id. ¶ 38; see also id. ¶ 56.)

Turning to the SAC, it states that "Decedent's injuries are a direct and proximate result of [Dothe's] negligence, including but not limited to, the deficiency in architectural design, planning, surveying, supervision, engineering and or negligent supervision of construction of the Cafe Sbarro construction project," (id. ¶ 97 (emphasis added)), and "Decedent's injuries are a direct and proximate result of [Ancor's] negligence, including but not limited to, the deficiency in design, planning, surveying, engineering, supervision and/or construction of the Cafe Sbarro construction project." (SAC ¶ 94 (emphasis added).)

Reading the allegations individually or taking the FAC as a whole does not indicate that Plaintiffs evinced an intent to bring a claim against "all individuals, parties and/or entities who were responsible for the construction of the Cafe Sbarro restaurant and present claims for the

11

failure of the defendants to segregate the valet compartment area which contained an exposed and unsafe man-lift." (See Pls.' Opp'n to Dothe at 8; Pls.' Opp'n to Ancor at 8.) As Defendant Dothe notes in its brief, it is telling that nowhere in Plaintiffs' FAC do they use the words "architect," "designer," or even "construction." (See Defs. Dothe's and Grana's Rep. Br. at 8.) These are not merely nuanced terms that equate with descriptions Plaintiffs previously employed. Allegations pertaining to the control, maintenance, management, supervision, or inspection of a business's premises are not going to put a designer or builder of those premises on notice of a possible lawsuit. Design and construction are substantively different concepts from premises control and maintenance. In all likelihood, the parties are different, as would be their ostensible duties to a potential plaintiff. As such, a reasonable reader could understand Plaintiffs' FAC as pleading a premises liability claim, but there is no indication of defective construction or defective design claims. (See id.)

     Importantly, there is nothing onerous about requiring Plaintiffs in this situation to include a fictitious defendant placeholder which would preserve claims against the parties responsible for construction and design. These are readily foreseeable prospective defendants in this type of case. Plaintiffs claim they did not know Defendant Dothe "sketched and proposed the means of egress which allowed Sbarro customers to exit the restaurant and have direct access to Defendant Trump's man-lift system," (Pls.' Opp'n to Dothe at 10), yet they reasonably could have expected that some person or entity was responsible for the design. Even if Plaintiffs were unsure of the identities or responsibility of the possible parties, they could have employed language that complied with Rule 4:26-4, indicating their intent to more specifically name these parties as further investigation revealed their true identities and liability. Here, Plaintiffs clearly did not anticipate bringing tort claims against the parties responsible for the design and construction of

the alleged deficient condition, and reliance on Rule 4:26-4 does not permit them to develop new theories of liability against previously unnamed defendants after the statute of limitations has expired.

Because Plaintiffs failed to provide an appropriate description in accordance with Rule 4:2604, sufficient to give reasonable notice of their intended claims against the entities responsible for design or construction of the alleged dangerous condition, the Court finds that Plaintiffs' claims against Defendants Dothe and Ancor are barred by the applicable statute of limitations.  Accordingly, Defendants Dothe's and Ancor's Motions to Dismiss will be granted, and all Counts against these defendants will be dismissed from the TAC with prejudice.

## IV.   CONCLUSION

For the reasons stated above, Defendants Dothe's and Ancor's Motions to Dismiss will be **GRANTED**.  All claims against Defendants Dothe and Ancor will be **DISMISSED WITH PREJUDICE** from the Third Amended Complaint.  An appropriate Order shall issue today.


Dated:   1/8/2015                                                                       s/ Robert B. Kugler
                                                                                                 ROBERT B. KUGLER
                                                                                                 United States District Judge